CONNOR v. THALHIMERS GREENSBORO, INC.

---

RUTH ESTELLE CONNOR, PLAINTIFF, v. THALHIMERS GREENSBORO, INC., DEFENDANT.

(Filed 21 February, 1968.)

1. **Negligence § 37b—**
     The owner of a store is not an insurer of the safety of his patrons, and a customer, in order to recover for injury sustained on the premises, must introduce evidence tending to establish actionable negligence on the part of the proprietor, the doctrine of *res ipsa loquitur* not being applicable.

2. **Negligence § 37f—**
     The evidence tended to show that defendant maintained swinging entrance and exit doors with panel glass, that plaintiff attempted to make an exit by a door that had been propped open by a turn screw at the top of the door, but that the door suddenly and without warning closed inward, causing plaintiff's injuries. There was no evidence that the door with its turn screw device was in a defective condition or was improperly maintained. *Held:* Involuntary nonsuit was properly entered.

APPEAL from *Crissman, J.,* November 20, 1967, Regular Civil Session of GUILFORD Superior Court, Greensboro Division.

This is a civil action instituted to recover damages for personal injuries alleged to have been sustained due to the actionable negligence of the defendant. From a judgment of nonsuit entered at the close of the plaintiff's evidence, the plaintiff appealed.

The plaintiff's allegations and evidence tend to show that on July 29, 1963, at about 11:00 a.m. plaintiff entered defendant's store located on South Elm Street in Greensboro, North Carolina, for the purpose of purchasing shoes. After going through the doors on the street, she entered a foyer or lobby area which was separated from the main portion of the store by five large glass doors. Each door was a separately contained unit, some seven feet high and four feet wide. All five of the doors were all the way open into the foyer or lobby at the time the plaintiff entered. After making a purchase of shoes, the plaintiff started to leave the store carrying a pocketbook in her left hand and the package of shoes cradled in her left arm. Her right arm and hand were free. The plaintiff stopped at the bag display counter some five or six feet from the door and, after looking, turned and stepped through the open door, the same door by which she had entered. Just after she crossed the threshold, the large heavy glass door suddenly and without warning — "just like a flash" — swung towards the plaintiff from her left, striking her in the face and left side, causing personal injuries.

The plaintiff saw no other customers and no other persons either in the lobby area of the store or going through the doors. The plaintiff saw no props or devices of any kind maintaining the open door. The plaintiff was a frequent visitor to the store — some two or three times a week — over a period of years and had never seen the doors open before.

The plaintiff's evidence further revealed that at the top of the door there was a turn screw which could be turned when the door was open and thereby maintain the door in an open position. The door opens into the lobby only and does not swing into the store. It stops at the threshold and has a self-closing mechanism. The operation of the doors was inspected and checked several times a day by the defendant, and it had been inspected during the morning before plaintiff was hurt. It was against company policy to keep the doors in an open position; and no one, other than the maintenance engineer and his assistant, was authorized by the defendant to open the doors and turn the turn screw for the purpose of maintaining the open position. The turn screw would not retain the doors in an open position unless the turn screw was turned completely. In other words,

when partially turned, the turn screw would not operate to keep the door open. The personnel of the defendant in charge of maintenance were authorized to keep the door open, but they did so only for the purpose of cleaning the premises, and they used only the turn screw device for this purpose and reset the turn screw by reversing the turn in order to close the door. When the door was open and retained open by the turn screw device, a sudden sharp jerk or push on the door would be sufficient to disengage the turn screw and cause the door to close. There was no evidence as to any sudden jerk or pull on the door on the occasion in question, and the evidence is entirely lacking as to any cause for the door to close suddenly as the plaintiff was going through it on her way out of the store. There was no evidence as to any defect in the door or in the turn screw device; and, from the plaintiff's evidence, it appears that the doors were originally installed at the time the store was opened about the year 1950 and that these doors had been in constant operation from that time until the time of the plaintiff's injury. There is no evidence that the doors had ever closed on any person prior to this time or that the doors had ever been repaired. The evidence further reveals that, subsequent to the injuries sustained by the plaintiff on this occasion, the doors were inspected some several hours later by the maintenance engineer of the defendant. At that time the door was found to be working properly and no defect in the door or in the turn screw device was found.

At the close of the plaintiff's evidence, upon motion of the defendant for judgment as of nonsuit, the motion was allowed. The plaintiff appealed.

*Hoyle, Boone, Dees and Johnson for plaintiff appellant.*
*Smith, Moore, Smith, Schell, and Hunter for defendant appellee.*

CAMPBELL, J.  Plaintiff's sole assignment of error is to the allowance of defendant's motion for judgment as of nonsuit at the close of the plaintiff's evidence.

The plaintiff alleged the defendant was negligent in failing "to keep and maintain its premises in a reasonably safe condition for its customers and, in particular, in that the defendant was in control of the heavy glass door, which the defendant had caused to be propped open and failed properly to brace to keep stationary and open, and in that the defendant's neglect in not properly securing the door caused the door to close quickly and without warning while the plaintiff was attempting to make her exit from the defendant's premises.

That the defendant knew or should have known of the condition of the door and failed to see that it worked properly."

The plaintiff's evidence fails to show that the defendant had propped the door open or even knew that the door was open at the time the plaintiff sought to exit or that there was any defect in the operation of the door.

In the case of *Watkins v. Furnishing Co.*, 224 N.C. 674, 31 S.E. 2d 917 (1944), the plaintiff sought to recover damages for personal injuries alleged to have been caused by the negligence of the defendant in the erection, operation and maintenance of "magic eye" doors in the entrance to its store building on Fayetteville Street in the City of Raleigh.

The evidence tended to show that the plaintiff in that case entered through the left side of the double door opening where the door on the left side was partially open, and the door suddenly closed and caught the plaintiff between said left door and the other door or door frame.

On appeal from a judgment of nonsuit, the Supreme Court of North Carolina said, "There is a total lack of evidence of negligence in the erection, operation or maintenance of the 'magic eye' doors. There is no evidence that the doors involved in the occurrence under investigation ever suddenly closed before said occurrence, or ever before caught anyone attempting to enter the store, notwithstanding the doors had been installed several months and thousands of customers had entered through the door openings. * * *

"* * * The owner of a store is not an insurer of the safety of those who enter his store for the purpose of making purchases, and the doctrine of *res ipsa loquitur* is not applicable. Before the plaintiff can recover he must, by evidence, establish actionable negligence. * * *

"* * * Persons are held liable by the law for the consequence of occurrences which they can and should foresee, and by reasonable care and prudence guard against. * * *"

In the case of *Hamilton v. Parker*, 264 N.C. 47, 140 S.E. 2d 726 (1965), the plaintiff sought to recover damages for injuries received when struck by a swinging door as she was entering the defendant's grocery store and from a judgment of nonsuit the plaintiff appealed. The Supreme Court of North Carolina in that case stated: "In the instant case, while the plaintiff alleged that the defendant maintained such swinging doors in an unsafe and hazardous condition, she offered no evidence to support such allegation. Furthermore, she offered no evidence tending to show that the doors complained of were improperly constructed, or that they had any me-

chanical defect or were improperly maintained. Neither is there any evidence on the record tending to show that such doors were not the customary type used in grocery stores, nor any evidence to the effect that a similar accident had occurred previously."

In the present case, the plaintiff relies on the fact that she entered through an open door to make a purchase and a short time thereafter attempted to exit by the same open door when suddenly and for no explainable reason the door closed, thereby causing injuries to her.

In our opinion, this does not establish actionable negligence as the doctrine *res ipsa loquitur* is not applicable, and a store owner is not an insurer of the safety of those who enter the store for the purpose of making purchases. Consequently, plaintiff's assignment of error is overruled, and the judgment entered below is

Affirmed.

Morris and Parker, JJ., concur.