AGGIE MAE SANDERS v. ANCHOR COMPANY, INC.

No. 7119SC560

(Filed 15 September 1971)

1. Negligence §§ 5.1, 53— liability of storekeeper for customer's safety

A storekeeper is not an insurer of his customers' safety while they are on his premises, but he does owe them the duty to exercise ordinary care to keep in a reasonably safe condition those portions of his premises which he may expect they will use during business hours, and to give warning of hidden peril or unsafe conditions insofar as these are known or can be ascertained by reasonable inspection.

2. Negligence §§ 5.1, 6— injury to store customer — res ipsa loquitur

A department store customer who was injured when a swinging glass door struck her on the nose may not rely upon the mere happening of the occurrence to carry her case to the jury.

3. Negligence §§ 5.1, 53— liability of store to customer who was struck by swinging door — insufficiency of evidence to show negligence

In an action to recover damages for personal injuries sustained when the plaintiff was struck on the nose by a swinging glass door at the entrance to the defendant's store, the trial court properly directed a verdict in the defendant's favor and dismissed the plaintiff's action for failure to show the store's negligence, where plaintiff offered no evidence to show that the door was improperly constructed or maintained, or that it had any mechanical defect.

4. Appeal and Error § 49— exclusion of testimony — review on appeal

The exclusion of testimony cannot be held prejudicial on appeal when the record fails to show what the answer of the witness would have been.

APPEAL by plaintiff from *Gambill, Judge,* 5 April 1971 Session of Superior Court held in RANDOLPH County.

Civil action to recover damages for personal injuries sustained when plaintiff was struck on the nose by a swinging glass door at the entrance to defendant's store. In the front of the store there were two sets of doors, each set consisting of two swinging glass doors paired together in one door frame. Both sets of doors opened on Sunset Avenue, one being on the eastern and one being on the western side of the store front, the two sets being separated from each other by a glass display window. All four swinging doors were alike. Each door was made of tinted glass and was approximately ¾ of an inch thick, three feet wide, and seven to eight feet high. On the inside and outside of each door there was a handle, larger than a broomstick and approximately 12 to 16 inches in length. Each door could swing both ways, swinging for a total of 180 degrees. When a door was pushed beyond 90 degrees, it would catch and stay open.

On 22 May 1963 plaintiff entered defendant's store to purchase a birthday present for her son. Plaintiff testified:

> "I went in Anchor's door, the one towards the First National Bank. That is the eastward most door. I went in the door around noon. The door was open. There was nobody maintaining the entrance to the door. As I went in, the door was open. It was swinging doors, glass, you know, a door on each side and they came together. . . . They had one of them pulled back and it was open when I went in. The other half was closed and one half was open and pushed back. I did not purchase a birthday present for my son. I didn't find what I wanted. . . .
>
> "After I decided to go look some other place, I started out the door, and, by the time I got to the door, it came in my face, and the blood just started streaming. . . . I did not touch the door in any way.
>
> \*   \*   \*   \*   \*
>
> "I went back and checked the door after it broke my nose. I took the door and pushed it back to see if it would stay open, and just a little pull brought it together. I don't know what caused it to come loose. . . . "

---

**Sanders v. Anchor Co.**

---

On cross-examination, plaintiff testified:

"I had been in that store often and I had gone through that same door many times. When I started out, I was looking straight ahead. When I started through the door going out, it was open. I was not carrying anything but my pocketbook. I had my pocketbook in one of my hands or my arms. There was nothing to prevent me from putting my hands up. I was looking straight ahead. There was nothing to prevent me from reaching out and stopping this door which I say was swinging to except it came to so fast I didn't see it. As to whether I actually saw the door, I saw the door when it hit me, when it swung against me. I hadn't even gotten out the door. I don't know whether I saw it then or not. When it hit me I was still in the inside and the blood was pouring. . . .

"I did not see the door until the moment it hit me. If I had, it wouldn't have hit me. You know I'd have caught it if I saw it a coming.

"My nose was the only part of my body that came in contact with the door. As to there being plenty of light, it was a sunny day and there was plenty of light inside the store. I do not know whether anybody had gone through the door just before I did or not. I don't know one way or the other whether anybody had just gone through the door or not. I didn't see anybody."

Defendant's store manager, called by the plaintiff as an adverse witness, testified that he did not know whether the door was open on 22 May 1963, that at that time the air conditioning was functioning and it was not a policy during this time to prop the doors open. He also testified:

"When you pushed it (the door) beyond 90 degrees and the door caught, it had no latch where you could hook it. There was no mechanical device at all to secure that door after it passed this 90 degrees. When I wanted to close the door, I had to exert quite a little bit of pressure and pull it to me."

At the close of plaintiff's evidence the court allowed defendant's motion for a directed verdict and entered judgment dismissing plaintiff's action.

---

Sanders v. Anchor Co.

---

*Ottway Burton for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Bynum M. Hunter for defendant appellee.*

PARKER, Judge.

[1] A storekeeper is not an insurer of his customers' safety while they are on his premises. He does owe them the duty to exercise ordinary care to keep in a reasonably safe condition those portions of his premises which he may expect they will use during business hours, and to give warning of hidden peril or unsafe conditions insofar as these are known or can be ascertained by reasonable inspection. *Routh v. Hudson-Belk Co.,* 263 N.C. 112, 139 S.E. 2d 1. Therefore, before plaintiff can recover in this case she must, by evidence, establish actionable negligence on the part of defendant. This, she has failed to do.

[2, 3] While plaintiff alleged that the door complained of was defective, she offered no evidence to support that allegation. No inference of negligence on the part of defendant arises from the mere happening of the occurrence disclosed by plaintiff's evidence; thus, plaintiff may not rely upon the doctrine of *res ipsa loquitur* to carry her case to the jury. *Watkins v. Furnishing Co.,* 224 N.C. 674, 31 S.E. 2d 917; *Connor v. Thalhimers Greensboro, Inc.,* 1 N.C. App. 29, 159 S.E. 2d 273. Plaintiff offered no evidence to show that the door was improperly constructed, or that it had any mechanical defect, or that it was improperly maintained. Neither is there any evidence that the entrance doors at defendant's store were not the customary type used in similar stores.

While plaintiff attempted to introduce evidence which she contends would tend to show that similar accidents had occurred previously, her proffered evidence was incompetent for that purpose and was properly excluded. Plaintiff's witness, Mrs. Ruth Dixon, could testify that her finger had been injured when it became caught in an entrance door to defendant's store, but she was unable to remember which door it was, whether she received her injury in 1962 or 1963, or how it happened. Similarly, while plaintiff's witness, Mrs. Bullins, who had worked on the second floor in defendant's store, could testify that "on several occasions people got hurt with little mashed fingers," she could not remember any dates, did not

know which door caused the injuries or the manner in which they occurred, and everything she did know concerning such injuries was what someone else had told her. Plaintiff's assignments of error directed to the exclusion of the testimony of Mrs. Dixon and Mrs. Bullins are without merit.

[4]  Plaintiff contends there was error when the trial judge sustained defendant's objection to the following question which plaintiff's counsel asked defendant's store manager, who was being examined as an adverse witness:

> Question: "To your knowledge, how many people were injured in the doors that Mrs. Sanders was injured in, prior to May 22, 1963?"

While the question may have been proper, what the witness would have answered does not appear in the record, and the exclusion of testimony cannot be held prejudicial on appeal when the record fails to show what the answer of the witness would have been. 1 Strong, N.C. Index 2d, Appeal and Error, § 49, p. 200.

We have carefully examined all of appellant's remaining assignments of error, and find them without merit. The judgment appealed from directing verdict for the defendant is

Affirmed.

Judges BRITT and MORRIS concur.